Michael J. PHILLIPS and Vickie Phillips, Plaintiffs,

v.

MORBARK, INC., Defendant.

No. 9:05–2446–PMD.

United States District Court,
D. South Carolina,
Beaufort Division.

June 19, 2007.

Gregory P. Sloan, Phillip Earl Reeves, Richard S. Stewart, Gallivan White and Boyd, Greenville, SC, for Plaintiffs.

Curtis L. Ott, Turner Padget Graham and Laney, Columbia, SC, Kevin G. Dougherty, Warner Norcross and Judd, Grand Rapids, MI, for Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Plaintiffs Michael J. Phillips' and Vickie Phillips' (1) Motion for Judgment Notwithstanding the Verdict and (2) Motion for New Trial Absolute.

## PROCEDURAL HISTORY

This is a products liability action wherein Plaintiffs alleged Defendant Morbark, Inc. ("Defendant" or "Morbark") manufactured, marketed, distributed, and sold the Morbark Model 4600 Wood Hog wood grinder in a defective and unreasonably dangerous condition. Plaintiffs argued, *inter alia*, the Wood Hog was defective and unreasonably dangerous because (1) the area where Plaintiff injured his hand was not guarded; (2) the remote control did not have a red, mushroom-shaped emergency stop button; and (3) there was no emergency stop button located on the Wood Hog within the reach of the conveyor area. Defendant denied liability, asserting the Wood Hog was not defective and unreasonably dangerous.

This matter was tried before this court and a jury from February 20, 2007 through February 23, 2007. On February 23, 2007, the court entered judgment in favor of Morbark pursuant to a jury verdict in its favor.

## STANDARD OF REVIEW

 Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a district court may grant a judgment notwithstanding the verdict "if there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party." *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir.1998) (internal quotation marks omitted). "[T]he evidence and all reasonable inferences from it are assessed in the light most favorable to the non-moving party, and the credibility of all evidence favoring the non-moving party is assumed." *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 160 (4th Cir.1988) (citations omitted). The evidence must be " 'of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a

verdict for the non-moving party.' " *Id.* (quoting *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 891 (4th Cir. 1980)).

 Motions for new trials are governed by Rule 59 of the Federal Rules of Civil Procedure. Unlike the procedure under Rule 50(b), on a motion for a new trial under Rule 59(e), a district court is permitted to weigh the evidence. *Cline*, 144 F.3d at 301. The court should grant a new trial only if " '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.' " *Id.* (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir.1996)). In considering this motion, the court views the evidence in the light most favorable to the prevailing party. *Perrin v. O'Leary*, 36 F.Supp.2d 265, 266 (D.S.C.1998). "Such a motion should be denied, unless there were substantial errors in evidentiary rulings or jury charges, or unless 'the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable people could not disagree on the verdict.' " *Id.* (quoting *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 497 (D.C.Cir.1995)). A district court's denial of a motion for a new trial "rests with the sound discretion of the trial judge and will not be reversed absent an abuse of discretion." *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir.2004).

## ANALYSIS

### A. Motion for Judgment Notwithstanding the Verdict

Plaintiffs seek judgment in their favor, notwithstanding the verdict, arguing that when construing all evidence in favor of

Defendant, and giving Defendant the benefit of all reasonable inferences that may be drawn therefrom, the only reasonable inference to be drawn from the evidence is that:

 a. The plaintiffs have proved by a preponderance of the evidence that the Morbark 4600 Woodhog was unreasonably dangerous and defective; and

 b. The plaintiffs have proved by a preponderance of the evidence that the defendant was negligent in designing and selling an unreasonably dangerous and defective product.

(Mot. for JNOV at 1.) Defendant, on the other hand, argues it introduced "extensive evidence, including expert testimony, about the design of its machine to show the grinder complied with applicable industry standards and consumer expectations." (Resp. in Opp'n to Mot. for JNOV at 3.)

■ Contrary to Plaintiffs' assertion, construing all evidence in favor of Defendant, the only reasonable inference is not that the Morbark Model 4600 Wood Hog was defective and unreasonably dangerous. Rather, there was a sufficient evidentiary basis for a reasonable jury to find for the Defendant. Gary Bardos, who was qualified as an expert in wood grinding and heavy equipment, testified that he believed the Wood Hog was a reasonably safe machine and that other than Mr. Phillips' accident, he was unaware of any person who had ever been injured around the conveyor area. He further testified about the four ways to shut down the Wood Hog: two emergency mushroom shut-down buttons, the ignition switch, and the remote control.

When asked whether he thought the remote control should have a switch to make the engine shut down immediately when the switch was activated, Mr. Bardos testified he did not think the remote should have such a switch due to inadver-tent shut-downs. On being asked why the conveyor area was not guarded, he testified there were no guards in the conveyor area because that was an area frequently requiring maintenance and that putting a guard in that area would impair the feature of the Wood Hog allowing the conveyor to fold over the top of the Wood Hog. Mr. Bardos also testified that guarding the conveyor area would make the area more difficult to clean and be a fire hazard because four bearings would be unable to be seen and maintained. Although Plaintiffs presented some evidence that the Morbark Model 4600 Wood Hog was defective and unreasonably dangerous, the court concludes there was a legally sufficient evidentiary basis for a reasonable jury to find for the Defendant. Accordingly, Plaintiffs' Motion for Judgment Notwithstanding the Verdict is denied.

### B. Motion for a New Trial

Plaintiffs assert the court should grant their Motion for a New Trial for four reasons: (1) the court improperly admitted unsworn testimony concerning the quality and service of the Defendant and the Wood Hog, resulting in prejudice to Plaintiffs; (2) the court admitted testimony concerning the lockout/tagout procedure, which was completely irrelevant to the case and prejudiced Plaintiffs; (3) the court allowed deposition testimony of one of Plaintiffs' employees to be published to the jury about what the employee would have done in Mr. Phillips' situation; and (4) the court allowed, over Plaintiffs' objection, jury instructions that overemphasized that Defendant was not an insurer of its product. (*See* Mot. for New Trial.)

### 1. Admission of Unsworn Testimony Concerning Quality and Service of Wood Hog

Plaintiffs complain about the fact that Defendant showed video footage from a

promotional video concerning the Morbark Model 4600 Wood Hog in its opening statement. Plaintiffs state, "While the plaintiffs had no objection to the 'video footage' shown, as it was instructive to the jury as to what a Morbark 4600 Woodhog is and how it functions, the plaintiffs did object to sound being played along with the video footage. Specifically, this objection was based upon numerous statements by supposed Morbark customers and a Morbark representative concerning the great quality of Morbark products, specifically the Morbark 4600 Woodhog." (Mot. for New Trial at 1.) Plaintiffs argue the admission of this unsworn testimony concerning the exact product at issue in the case was extremely prejudicial.

Defendant argues the court committed no error in playing the audio portion of the tape. Although Defendant notes Plaintiffs did object at trial to the audio portion being played, Defendant asserts Plaintiffs' "objection was untimely and the customer comments were minimal and harmless." (Resp. in Opp'n to Mot. for New Trial at 2.) Defendant also argues Plaintiffs waived any objection, pointing out that Plaintiffs listed the same DVD on their own exhibit list and that the copy of this exhibit included the audio portions the jury heard. (Resp. in Opp'n to Mot. for New Trial at 2.)

As stated in Rule 26(a)(3), pretrial disclosures must be made at least thirty days before trial. *See* Fed.R.Civ.P. 26(a)(3). Within fourteen days, a party may serve and file any objection "that may be made to the admissibility of materials identified under Rule 26(a)(3)(C)." *Id.* "Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, are waived unless excused by the court for good cause." *Id.* The Local Rules contain a similar requirement. Pursuant to Local Rule 26.07, D.

S.C., attorneys are required to meet "five (5) business days prior to the date set for submission for pretrial briefs for the purpose of marking and exchanging all exhibits ... intended to be used at trial." Rule 26.07, D.S.C. If there is an unresolved objection to an exhibit, the attorneys are required to notify the court of such objection in the pretrial brief. *Id.* "Failure to raise a timely objection under Fed. R. Civ. 26(a)(3) or to preserve that objection by compliance with this Local Civil Rule may be deemed a waiver of the right to raise objections at trial." *Id.*

In the case *sub judice*, not only did Plaintiffs fail to object to the video prior to Defendant's use of it at trial, but Plaintiffs included it on their own exhibit list. Furthermore, at the time the court allowed the video to be played, the judge instructed the jury that the video was being played so that the jury would understand how the machine works—the judge told the jury that they were not to be interested in the praise and glory that goes along with a promotional. Because the Plaintiffs did not object to the video in the pretrial disclosures, and because Plaintiffs included the video on their exhibit list, the court did not err in allowing the video to be played for the jury. *Cf. Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534–553 (D.Md.2007) ("[I]f a party properly makes his or her Fed.R.Civ.P. 23(a)(3) pretrial disclosures of documents and exhibits, then the other side has fourteen days in which to file objections. Failure to do so waives all objections other than under Rules 402 or 403, unless the court excuses the waiver for good cause."). Furthermore, the fact that the judge instructed the jury to consider the tape solely for purposes of understanding how the Wood Hog functions convinces the court not to grant Plaintiffs' Motion for New Trial on this ground. *See Bruton v. United States*,

391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ("Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions.... It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information.").

### 2. Admission of Testimony Concerning Lockout/Tagout Procedure

In Plaintiffs' Motion for a New Trial, Plaintiffs assert the admission of testimony regarding lockout/tagout was irrelevant to the case and prejudicial to the Plaintiffs. (*See* Mot. for New Trial at 2.) Plaintiffs state, "The only expert testimony provided in this case regarding lockout/tagout issues was from the plaintiffs' expert, Bryan R. Durig, Ph.D., P.E., who testified that lockout/tagout is necessary when performing maintenance or repairs on equipment." (Mot. for New Trial at 2.) According to Plaintiffs, there was no testimony in this case that Mr. Phillips was performing maintenance or repairs on the Wood Hog. (Mot. for New Trial at 2.) According to Plaintiffs, Morbark "went out of its way to show that Mr. Phillips' actions just prior to the incident constituted 'cleaning.' As such, any testimony regarding lockout/tagout was completely irrelevant to the case at hand and was prejudicial to the plaintiffs." (Mot. for New Trial at 2.)

Defendant asserts the admission of this testimony was not erroneous because the lockout/tagout policies "were relevant to the issue of industry standards and consumer expectations concerning the operation of this machine." (Resp. in Opp'n to Mot. for New Trial at 3.) According to Defendant, several witnesses, including Mrs. Phillips, testified that "maintenance" included "cleaning." (Resp. in Opp'n to Mot. for New Trial at 3.)

■■ At trial, Mr. Phillips testified that at the time he was injured, he was not cleaning or servicing the Wood Hog. He also testified that lockout/tagout procedure means that if someone is working on the machine or doing maintenance, the individual would lock it out and tag it out. Mrs. Phillips testified that if her husband had been cleaning the Wood Hog, he would have locked it out and tagged it out. Mr. Bardos testified that, in his opinion, maintenance of the conveyors included cleaning. Thus, while Plaintiffs assert Mr. Phillips was not cleaning the Wood Hog when he was injured, there was testimony that he *was not* cleaning the machine, and there was testimony that he *was* cleaning the machine. Mr. Phillips himself testified that he took his right hand and slapped the material building up near the conveyor.

Contrary to Plaintiffs' assertions, there was some evidence that maintenance included cleaning, and Mr. Phillips' version of the events indicates the injury occurred when he was attempting to remove debris buildup. The court thus finds no error in the admission of evidence regarding the lockout/tagout policy.

### 3. Admission of Deposition Testimony About What Plaintiffs' Employee Would Have Done in Mr. Phillips' Situation

■■ At trial, the court allowed the deposition testimony of Richard Ellison, an employee of Plaintiffs' company, to be read. His testimony indicated that he would not have done what Mr. Phillips did on the day of the accident. Plaintiffs assert that because there was no testimony on record to indicate that either Mr. Phillips or his company had ever indicated to Ellison the proper way to operate the Wood Hog, Ellison's testimony is "completely irrelevant and clearly prejudicial to

the plaintiffs." (Mot. for New Trial at 2–3.) According to Plaintiffs, "Mr. Ellison's testimony as to what he would have done in Mr. Phillips' situation was no more relevant than what the bailiffs in the courtroom would have done under similar circumstances." (Mot. for New Trial at 3.) Defendant argues admission of this testimony was not erroneous because it presented evidence at trial that Mr. Phillips was an inexperienced operator of the machine.

As Defendant notes, there was evidence that Mr. Phillips was not an experienced operator of the Wood Hog. Mr. Phillips missed a large portion of the initial set-up and training Morbark provided through Herb Christensen, and Mr. Phillips seldom attended the safety meetings Mrs. Phillips led every two to three weeks. As Mr. Ellison was an operator of the wood grinder and was familiar with the companies' safety policies, the court finds his testimony relevant. The court finds no error in the admission of his testimony.

### 4. Repetition in the Jury Charges

Plaintiffs also move for a new trial because in instructing the jury, the court "allowed a set of jury instructions which twice indicated to the jury that the defendant was not an insurer of its product." (Mot. for New Trial at 3.) Plaintiffs assert "the inclusion of this jury instruction more than once was in error and was clearly prejudicial to the plaintiffs." (Mot. for New Trial at 3.) Defendant, on the other hand, asserts Plaintiffs' argument is meritless.

The mere fact that a jury instruction contains some repetition does not mean such instructions are erroneous or require the court to grant a new trial. *See Willis v. Pa. R.R. Co.,* 269 F.2d 549, 553–54 (4th Cir.1959) ("We do not think that in this case the charge was unduly repetitive

or too lengthy. The theories of primary negligence, contributory negligence, and comparative negligence were involved, and it is appropriate for the court to charge the jury in detail as to these different theories of negligence, even at the risk of some repetition."). Although repetitious charges can confuse a jury, *see United States v. Salliey,* 360 F.2d 699, 702 (4th Cir.1966), the court finds the instruction was not unduly repetitive. Furthermore, the only repetition at issue was the fact that the court twice instructed the jury that Defendant was not an insurer of the product. Because the court finds the jury instructions, taken as a whole, adequately stated and informed the jury of the controlling law, the court denies Plaintiffs' Motion for a New Trial.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiffs' Motion for Judgment Notwithstanding the Verdict is **DENIED.** It is also **ORDERED** that Plaintiffs' Motion for a New Trial is **DENIED.**

**AND IT IS SO ORDERED.**